**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ANITA THORNHILL,               )
                                          )
          Plaintiff,          )
                                          )
        v.                     )       Civil Action No. 13-530
                                          )       United States Magistrate Judge
CAROLYN W. COLVIN, ACTING    )       Cynthia Reed Eddy
COMMISSIONER OF SOCIAL       )
SECURITY,                      )
                                          )
         Defendant.       )

**MEMORANDUM OPINION**

## I.     Introduction

Plaintiff Anita Thornhill ("Thornhill") brings this action pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social

Security ("Commissioner") denying her application for supplemental security income ("SSI")

benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f].  The

matter is presently before the Court on cross-motions for summary judgment filed by the parties

pursuant to Federal Rule of Civil Procedure 56.[1]  For the reasons that follow, the

Commissioner's motion for summary judgment (*ECF No. 13*) will be denied.  Thornhill's

motion for summary judgment (*ECF No. 10*) will be denied to the extent that it requests an

award of benefits, but granted to the extent that it seeks a vacation of the Commissioner's

decision, and a remand for further proceedings.  The decision of the Commissioner will be

---

[1] The Court acknowledges that judicial review under the Act is not governed by the standards generally
applicable under Rule 56.  *Banks v. Shalala*, 43 F.3d 11, 13-14 (1st Cir. 1994); *Flores v. Heckler*, 755 F.2d
401, 403 (5th Cir. 1985).  In this context, the procedure typically employed at the summary-judgment
stage of litigation "merely serves as a convenient method under which both parties may present
appropriate briefs in support [of] and in opposition to the[ir] respective positions."  *Sumler v. Bowen*, 656
F.Supp. 1322, 1330 (W.D.Ark. 1987).

vacated, and the case will be remanded for further consideration of Thornhill's application for SSI benefits.

## II.     Procedural History

Thornhill initially applied for SSI benefits on February 11, 2008, alleging that she had become "disabled" on April 1, 2005.  R. at 45.  Pennsylvania's Bureau of Disability Determination ("Bureau") denied the claim on May 6, 2008.  R. at 45.  Thornhill responded on May 23, 2008, by filing a request for an administrative hearing.  R. at 45.  The hearing requested by Thornhill was held before Administrative Law Judge James Bukes on September 18, 2009.  R. at 45.  On October 22, 2009, Judge Bukes issued a decision denying Thornhill's application for benefits.  R. at 42-58.  After learning of the decision, Thornhill filed a request for review with the Appeals Council.  The request for review was denied on March 24, 2010.  R. at 59.

Thornhill protectively filed a new application for SSI benefits on June 9, 2010, alleging the existence of a statutory disability beginning on January 1, 2005.  R. at 93, 104.  The Bureau denied the application on August 13, 2010.  R. at 70.  On September 2, 2010, Thornhill responded to the denial by requesting an administrative hearing.  R. at 75-77.  The requested hearing was held on September 8, 2011, before Administrative Law Judge ("ALJ") David J. Kozma.  R. at 29.  Thornhill, who was represented by counsel, appeared and testified at the hearing.  R. at 31-40.  Samuel E. Edelmann ("Edelmann"), an impartial vocational expert, provided testimony about the expectations of employers existing in the national economy.  R. at 39-40.  In a decision dated September 21, 2011, the ALJ determined that Thornhill was not "disabled" within the meaning of the Act.  R. at 11-28.

On November 3, 2011, Thornhill sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council.  R. at 8.  The Appeals Council denied the

request for review on February 15, 2013, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. R. at 1. Thornhill commenced this action on April 12, 2013, seeking judicial review of the Commissioner's decision. ECF Nos. 1-3. Thornhill and the Commissioner filed motions for summary judgment on August 5, 2013, and October 4, 2013, respectively. ECF Nos. 10 & 13. In accordance with 28 U.S.C. § 636(c)(1), the parties have consented to have this matter resolved by a United States magistrate judge. ECF Nos. 9 & 15. The motions for summary judgment filed by the parties are the subject of this memorandum opinion.

## III.    Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.

1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

Section 105 of the Contract With America Advancement Act of 1996 ("CWAAA") amended the Social Security Act to provide that "an individual shall not be considered to be disabled" thereunder if "alcoholism or drug addiction" would be "a contributing factor material to the Commissioner's determination that the individual is disabled." Pub. L. No. 104-121, § 105; 110 Stat. 847, 852-853 (1996); 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). The Commissioner has promulgated regulations to implement the statutory mandate of the CWAAA. 20 C.F.R. §§ 404.1535, 416.935. Under the applicable regulations, the critical question is whether a claimant who is disabled as a result of drug or alcohol use would remain disabled if he or she were to stop using those substances. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). If his or her disability would persist even after a cessation of drug or alcohol abuse, he or she is

entitled to an award of benefits. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). Conversely, if a claimant's disability would not remain in the absence of continuing drug or alcohol abuse, a finding of "materiality" is warranted, thereby requiring a denial of benefits. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV.     The ALJ's Decision

In his decision, the ALJ determined that Thornhill had not engaged in substantial gainful activity subsequent to the date of her application. R. at 16. Thornhill was found to be suffering from a seizure disorder, hypertension, an unspecified bipolar disorder, major depressive disorder, post-traumatic stress disorder ("PTSD"), a generalized anxiety disorder, alcohol dependence, polysubstance dependence, and Hepatitis C. R. at 16-17. Although her Hepatitis C was deemed

to be "non-severe," her remaining impairments were found to be "severe" under the Commissioner's regulations. R. at 16-17; 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Thornhill's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 17-19.

In accordance with 20 C.F.R. § 416.945, the ALJ assessed Thornhill's "residual functional capacity"[2] as follows:

> After careful consideration of the entire record, I find that if the claimant ceases the abuse of drugs (and/or other substances), the claimant has the residual functional capacity to perform a full range of work at all exertional levels performed in a low stress work environment limited to simple, routine, repetitive tasks involving no contact with the general public.

R. at 19. The ALJ further determined that, as a result of Thornhill's "active and continuing drug and alcohol abuse," she "would be unable to maintain regular pace and attendance on the job." R. at 19. Thornhill had no "past relevant work"[3] experience. R. at 26, 39. Edelmann testified that the functional limitation attributable to substance abuse would preclude an individual from maintaining a full-time job. R. at 40.

Thornhill was born on April 23, 1970, making her forty years old on the date of her application and forty-one years old on the date of the ALJ's decision. R. at 26, 40. She was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. § 416.963(c).

---

[2] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[3] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

Thornhill had the equivalent of a high school education[4] and an ability to communicate in English.  R. at 40, 107, 109.  Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Thornhill would have been able to work as a janitor, an assembler, or a sorter in the absence of continued substance abuse.  R. at 26-28.  Edelmann's testimony established that those jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B).[5]  R. at 40.  Consequently, Thornhill's substance abuse was deemed to be "a contributing factor material to" a finding of "disability," thereby resulting in a denial of benefits under the CWAAA.  R. at 27-28.

## V.  Discussion

SSI benefits under Title XVI are not available on a retroactive basis.  20 C.F.R. §§ 416.200, 416.335.  Therefore, the period of time relevant to this case began when Thornhill protectively applied for SSI benefits and ended on the date of the ALJ's decision.  R. at 27-28.  Thornhill does not mount a comprehensive challenge to the ALJ's factual findings.  Instead, she limits her argument to the question of whether the ALJ erred in failing to procure a medical opinion concerning the issue of materiality.[6]  ECF No. 11 at 4.

---

[4]  The record indicates that Thornhill obtained her General Educational Development ("GED") certification in 1997.  R. at 40, 109.

[5]  At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003).  This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

[6]  The quality of the hearing transcript is so poor that the import of Edelmann's testimony cannot be readily ascertained.  R. at 39-40.  When an administrative decision is not amenable to "meaningful judicial review," a remand for further proceedings may be required for that reason alone. *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800 (3d Cir. 2010); *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 119 (3d Cir. 2000).  The "inaudible" notations appearing in the transcript of the administrative hearing "make it impossible to comprehend the testimony from its context." *Thomas v. Chater*, 933 F.Supp. 1271, 1275, n. 3 (D.V.I. 1996).  If Thornhill had challenged the ALJ's findings on a more comprehensive basis, the poor quality of the transcript may have provided the Court with an independent basis for vacating the Commissioner's decision.

Thornhill went to the Western Psychiatric Institute and Clinic ("WPIC") on May 18, 2010, complaining of depression, hopelessness, and suicidal thoughts. R. at 214. She described thoughts of positioning herself in front of a moving bus or jumping from a bridge. R. at 214. Thornhill asserted that the recent death of her father had caused her to start consuming cannabis and alcohol after a period of abstinence lasting for three and a half years. R. at 214. The record indicates that she used cocaine shortly before going to the WPIC. R. at 215. She was admitted to the facility for inpatient treatment.[7] R. at 214-220. Upon admission, Thornhill was placed on a protocol designed to facilitate her "withdrawal from alcohol." R. at 215. She was discharged on May 24, 2010. R. at 216. At that time, she was given a Global Assessment of Functioning ("GAF") rating of twenty.[8] R. at 216. Thornhill applied for SSI benefits a few weeks after leaving the WPIC. R. at 104.

On April 23, 2011, Thornhill was admitted to Armstrong County Memorial Hospital ("ACMH") for inpatient psychiatric treatment. R. at 486-493. The admission occurred because she had been experiencing "increasing suicidal ideation in the context of multiple stressors." R. at 486. Thornhill evidently had a plan to kill herself by cutting her wrists. R. at 489. She expressed the view that inpatient treatment was needed to prevent her from carrying out the plan.[9] R. at 489. A urine specimen provided by Thornhill at the time of her admission tested

---

[7] Although the nature of Thornhill's admission is not clear from the record, it appears that she was voluntarily admitted for inpatient treatment pursuant to 50 PA. STAT. § 7201.

[8] "The Global Assessment of Functioning ('GAF') scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's [level of] psychological, social and occupational function[ing]." *Taliaferro v. Astrue*, 788 F.Supp.2d 412, 414, n. 2 (W.D.Pa. 2011). A GAF score falling between eleven and twenty is assigned when an individual exhibits either a danger of self-harm, a failure to maintain his or her personal hygiene, or a gross impairment in the area of communication. American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, ("DSM-IV-TR")(4th ed. 2000), at 34.

[9] Thornhill was apparently admitted to ACMH on a voluntary basis. 50 PA. STAT. § 7201.

"negative" for illicit drugs.  R. at 490.  She was discharged from inpatient care on April 25, 2011.  R. at 486-487.

Thornhill experienced more episodes of suicidal ideation in July 2011.  R. at 621.  On July 26, 2011, she was voluntarily admitted to the WPIC pursuant to 50 PA. STAT. § 7201.  R. at 621-622.  At the time of her admission, Thornhill described thoughts of throwing herself from a bridge.[10]  R. at 621.  She also complained of flashbacks stemming from a murder that she had witnessed in 2009.[11]  R. at 621.  Thornhill denied that she had been actively abusing drugs and alcohol during the period of time immediately preceding her admission.  R. at 621.  Nevertheless, members of the WPIC's staff reported the smell of smoke in Thornhill's restroom on the morning of July 28, 2011, shortly after visitors had left her room.  R. at 622.  Thornhill was discharged later that day.  R. at 622.  The next morning, it was noted that Thornhill's urine had tested "positive" for cocaine.  R. at 622.

When questioned by the ALJ about her substance abuse, Thornhill acknowledged that she had suffered "a relapse in July."  R. at 38.  She stated that the relapse had been triggered by stress.  Thornhill denied that she had used drugs or alcohol during the six weeks falling between her discharge and the hearing.  R. at 38.

In his decision, the ALJ observed that Thornhill had exhibited "ongoing problems with substance abuse for many years."  R. at 18.  He stated that "the record d[id] not reveal a credible established period of sobriety."  R. at 18.  The ALJ's finding of materiality was attributed to an "inference" that Thornhill's "mental status" and "overall functioning" would improve if she were

---

[10] The reference to Thornhill's thoughts about throwing herself from a bridge appear in the documentary record of her hospitalization.  R. at 621.  At the hearing, Thornhill testified that she had been planning to overdose on her prescribed medications.  R. at 33-34.

[11] A separate portion of the documentary record suggests that Thornhill witnessed a "shooting" in May 2010.  R. at 635.  It is not clear whether Thornhill experienced two separate traumatic events, or whether the record contains conflicting information about the time of a single event.

able to attain "long-term sobriety." R. at 19. His decision denying Thornhill's application for SSI benefits was premised on a finding that, in the absence of continued substance abuse, her "mental impairments would be manageable through medications and would produce no more than mild to moderate limitations upon any area of mental functioning." R. at 25. Calling Thornhill's credibility into question, the ALJ concluded that "drug and alcohol abuse remain[ed] a part of the disability picture." R. at 26.

Since most of the factual issues in this case are not disputed at this stage, the only question before the Court is whether the ALJ erred in making a finding of materiality without procuring an opinion from a medical expert. ECF No. 11 at 4. It is axiomatic that a denial of benefits premised on the CWAAA "must be supported by at least some medical evidence." *Sklenar v. Barnhart*, 195 F.Supp.2d 696, 700 (W.D.Pa. 2002). That evidence need not come in the form of "expert psychiatric opinion evidence." *McGill v. Commissioner of Social Security*, 288 Fed.Appx. 50, 53 (3d Cir. 2008)(unpublished). In the absence of objective evidence showing improvement in a claimant's condition during periods of sobriety, however, there may be "no logical way" for an administrative law judge to make a finding of materiality without seeking an opinion from a medical expert. *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 431 (W.D.Pa. 2010). That is especially true in a case involving mental impairments. Social Security Ruling 13-2p explicitly recognizes that no "research data" exists that could be "use[d] to predict reliably that any given claimant's co-occurring mental disorder would improve, or the extent to which it would improve, if the claimant were to stop using drugs or alcohol."[12] Social Security Ruling 13-2p, 2013 WL 621536, 2013 SSR LEXIS 2, at *26. The functional limitation that

---

[12] The Commissioner points out that Social Security Ruling 13-2p was issued after the ALJ's decision in this case. ECF No. 14 at 13. That fact is inconsequential. Social Security Ruling 13-2p merely explains how materiality determinations should be made under the CWAAA. The CWAAA was enacted in 1996. Pub. L. No. 104-121; 110 Stat. 847 (1996).

rendered Thornhill "disabled" was her inability "to maintain regular pace and attendance on the job." R. at 19. That limitation is not necessarily linked to an impairment that would normally be expected to improve with abstinence from drugs or alcohol. Social Security Ruling 13-2p, 2013 WL 621536, 2013 SSR LEXIS 2, at *22. The ALJ's conclusion that "long-term sobriety" would render Thornhill able to work amounted to speculation that her "disabling" limitation would cease in the absence of continued substance abuse. R. at 26. A layperson's speculation about the causes of an individual's medical condition cannot be equated with "evidence." *Brown v. Pennsylvania State Department of Health*, 514 F.Supp.2d 675, 681, n. 13 (M.D.Pa. 2007).

The Court acknowledges that Dr. John Vigna, a non-examining psychological consultant, observed that Thornhill's use of drugs and alcohol had been a "precipitating factor" in some of her hospitalizations. R. at 278. That observation, however, sheds no light on the issue of materiality. Dr. Vigna asserted that Thornhill was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairments." R. at 265. Since Dr. Vigna did not believe Thornhill to be "disabled" in the first place, his observation about her drug and alcohol abuse did not relate to whether her "disability" would persist during periods of sobriety. Furthermore, the mere fact that Thornhill was suitable for discharge after being weaned from alcohol does not necessarily mean that she was capable of working. When Thornhill was discharged from inpatient treatment on May 24, 2010, she still had a GAF score of twenty. R. at 216.

The statutory provision authorizing the commencement of this action provides the Court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Since the ALJ's finding of

materiality is not supported by substantial evidence, his decision cannot be affirmed. An immediate award of benefits is justified only where "the evidentiary record has been fully developed," and where "the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini*, 727 F.Supp.2d at 432. That standard is clearly not satisfied in this case. The record contains no opinion evidence concerning the impact of Thornhill's substance abuse on her ability to work. Moreover, the hearing conducted in this case was very brief. The testimonial evidence does not provide much insight into whether Thornhill refrained from using drugs and alcohol for a significant period of time. R. at 38. Under these circumstances, the proper remedy is a remand for further consideration of Thornhill's application for SSI benefits. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 504-507 (3d Cir. 2009).

Thornhill devotes a considerable portion of her brief to confusion among courts as to whether the claimant or the Commissioner bears the "burden of proof" with respect to the issue of materiality. ECF No. 11 at 6-12. The confusion relating to this issue evaporates when one recognizes the distinction between the "burden of production" and the "burden of persuasion." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 508-512, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)(discussing the differences between the distinct burdens in the context of employment discrimination). The burden of production determines "which party bears the obligation to come forward with the evidence at different points in the proceeding." *Shaffer v. Weast*, 546 U.S. 49, 56, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005). In contrast, the burden of persuasion determines "which party loses if the evidence is closely balanced." *Id.* By focusing on how the issue of materiality should be decided when the evidence is in equipoise, Thornhill clearly refers to the burden of persuasion rather than to the burden of production. ECF No. 11 at 6-12.

In an adversarial proceeding, the plaintiff normally bears both the burden of production and the burden of persuasion. *Henderson v. Shinseki*, 562 U.S. ___, ___, 131 S.Ct. 1197, 1206, 179 L.Ed.2d 159 (2011)(discussing the differences between adversarial litigation and non-adversarial administrative proceedings). Unlike civil cases involving opposing parties, Social Security disability proceedings conducted before the Commissioner "are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000)(plurality opinion). The Commissioner is required "to investigate the facts and develop the arguments both for and against granting benefits." *Id.* When presented with an application for benefits, the Commissioner must make factual *findings* relating to whether the claimant is "disabled." 42 U.S.C. §§ 405(b)(l), 1383(c)(1)(A). Although those findings are judicially reviewable, they are to be regarded as "conclusive" if "supported by substantial evidence." 42 U.S.C. § 405(g). A decision awarding benefits to a claimant is not subject to further review, since the Commissioner cannot appeal her own decision. *Sullivan v. Finkelstein*, 496 U.S. 617, 625, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990). The relationship between the claimant and the Commissioner does not become adversarial until the claimant commences an action seeking review of the Commissioner's decision. 42 U.S.C. §§ 405(g), 1383(c)(3). That relationship ceases to be adversarial when the case is remanded for further proceedings, since a subsequent decision denying the claimant's application for benefits can only be reviewed within the context of a new civil action. *Shalala v. Schaefer*, 509 U.S. 292, 299-300, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993). "It would make no sense for the Court to hold that the Commissioner bears the burden of *persuasion* with respect to the issue of materiality. Given that the Commissioner is charged with the duty of making *findings of fact*, [s]he is the one who needs to be *persuaded* one way or

the other." *Lukaszewicz v. Astrue*, Civil Action No. 10-1185, 2011 WL 2441732, at *7, 2011 U.S. Dist. LEXIS 72942, at *17 (W.D.Pa. May 27, 2011)(emphasis in original).

Since administrative proceedings before the Commissioner are conducted on an *ex parte* basis, the only "burden of proof" relevant to this case is the burden of production. *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). The critical inquiry in any case involving a claimant engaged in substance abuse is whether the functional limitations which render him or her "disabled" would persist in the absence of continued drug or alcohol consumption. *Salazar v. Barnhart*, 468 F.3d 615, 623-624 (10th Cir. 2006). The claimant is responsible for producing evidence about his or her own medical condition. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). The Commissioner is required to produce evidence concerning "the types and numbers of jobs that exist in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 468, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). "The question of whether 'alcoholism or drug addiction' is 'a contributing factor material to' a claimant's disability generally turns on medical information unique to the claimant rather than on general conditions in the national economy." *Lukaszewicz*, 2011 WL 2441732, at *8, 2011 U.S. Dist. LEXIS 72942, at *20. For this reason, the claimant bears the burden of production with respect to the issue of materiality. *Cage v. Commissioner of Social Security*, 692 F.3d 118, 122-125 (2d Cir. 2012); *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Doughty v. Apfel*, 245 F.3d 1274, 1278-1280 (11th Cir. 2001); *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999). Given her status as an inquisitorial finder of fact, however, the Commissioner "must develop a full and fair record" and support a finding of materiality with "substantial evidence." *Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003).

**VI.     Conclusion**

For the foregoing reasons, the Commissioner's motion for summary judgment (*ECF No. 13*) will be denied, and Thornhill's motion for summary judgment (*ECF No. 10*) will be denied to the extent that it requests an award of benefits but granted insofar as it seeks a vacation of the Commissioner's decision, and a remand for further administrative proceedings. The Commissioner's decision in this case will be vacated, and the case will be remanded for further consideration of Thornhill's application for SSI benefits. Thornhill must be afforded "an opportunity to be heard" during the course of the upcoming proceedings, and the Commissioner must "fully develop the record before rendering a ruling" as to whether benefits should be awarded. *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800-801 (3d Cir. 2010). No opinion is expressed as to whether Thornhill is "disabled" within the meaning of the Act, or as to whether she would be able to work in the absence of continued substance abuse. The Court holds only that, on the basis of the existing record, the ALJ's finding of materiality is not supported by substantial evidence. *Salazar*, 468 F.3d at 624.

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:     All counsel of record via CM-ECF

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANITA THORNHILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-530 |
| | ) | United States Magistrate Judge |
| CAROLYN W. COLVIN, ACTING | ) | Cynthia Reed Eddy |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

AND NOW, this 2nd day of April, 2014, IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment (*ECF No. 13*) is **DENIED**. IT IS FURTHER ORDERED that the Plaintiff's Motion for Summary Judgment (*ECF No. 10*) is **DENIED** to the extent that it requests an award of benefits, but **GRANTED** insofar as it seeks a vacation of the decision of the Commissioner of Social Security, and a remand for further proceedings. The Commissioner's decision is hereby **VACATED**, and the case is **REMANDED** for further consideration of the Plaintiff's application for supplemental security income benefits.

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:    All counsel of record via CM-ECF